UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN MARZEC,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　　　)　　No. 05 C 1594
　　　　　　　　　　　　　　　　　　　　)
JO ANNE B. BARNHART, Commissioner　)　　Judge Nan R. Nolan
of Social Security,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　　)

## MEMORANDUM OPINION AND ORDER

Plaintiff John Marzec suffers from schizophrenia and is currently receiving Disability Insurance Benefits under Title II of the Social Security Act ("SSA" or the "Act"). 42 U.S.C. §§ 416, 423(d). In this action, Marzec seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disabled Adult Child Insurance Benefits ("CIB") under Title XVI of the SSA. 42 U.S.C. § 1614(a)(3). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and have filed cross-motions for summary judgment. Given the unusual nature of the facts presented, the court held an oral argument on November 21, 2006. For the reasons set forth here, the court now grants the Commissioner's motion and denies Marzec's motion.

## PROCEDURAL HISTORY

Marzec has been receiving disability insurance benefits in his own right since 1985. On April 20, 1998, at the age of 47, Marzec applied to receive additional benefits as a disabled adult child, claiming that he became disabled on June 24, 1968 due to schizophrenia. (R. 24-25.) The application was denied initially and again on reconsideration. Marzec filed a timely request for a hearing, which was scheduled for June 15, 2000. The Administrative Law Judge ("ALJ") dismissed the case without holding a hearing, however, citing res judicata grounds. Specifically, the ALJ noted that Marzec had applied for and received disability insurance benefits beginning in June

1973, but that he had stopped receiving those benefits in May 1977 based on a determination that he had performed substantial gainful activity ("SGA") in February 1977. To qualify for the requested child disability benefits, Marzec needed to show that he was continuously disabled from a date before his 22nd birthday on November 22, 1972, to the date of his CIB application on April 20, 1998. The prior determination that Marzec was not disabled as of May 1977, the ALJ held, precluded any argument that he was in fact continuously disabled during the relevant 26-year period. (R. 266-67.)

Marzec appealed the decision, and on August 6, 2003, the Appeals Council referred the case back to the ALJ for a full hearing, finding that "res judicata was improperly applied." (R. 286-87.) Following an April 2, 2004 hearing, the ALJ denied Marzec's claim for benefits in a decision dated April 30, 2004. (R. 11-22, 337.) The ALJ found that Marzec had failed to demonstrate that he was disabled prior to attaining the age of 22, or that he was continuously disabled through August 1997 as required for an award of CIB. 20 C.F.R. §§ 404.352(b)(1), 404.621(a). In reaching this conclusion, the ALJ noted that a claimant cannot prove continuous disability if he has engaged in substantial gainful activity ("SGA"), and that Marzec was unable to establish that his earnings from work performed in 1972, 1977, and 1984 did not qualify as SGA. (R. 21-22.)

On October 8, 2004, the Appeals Council denied Marzec's request for review. (R. 7.) Marzec now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.

## FACTUAL BACKGROUND

Marzec was born on November 22, 1950 and was 47 years old when he first applied for CIB. (R. 24.) He has a lengthy history of severe mental illness from schizophrenia with paranoid features, and is currently receiving Disability Insurance Benefits in his own right based on a 1985 application. The facts of this unusual case are presented below.

2

A.  **Medical, Work, and Benefits History**

In 1968, at the age of 17, Marzec was diagnosed as suffering from a personality disorder with paranoid features and was hospitalized at the Illinois State Psychiatric Institute ("ISPI") for 140 days between August 12 and December 30, 1968. (R. 108, 110.) Marzec was hospitalized again from March 10 through June 2, 1971, with a prognosis that "[s]eems to be poor in view of his being chronic schizophrenic with paranoid features." (R. 92-96.) After his release, Marzec worked for some period of time in 1972 as an attendant at D&H Mobile Gas Station. (R. 346.) He earned a total of $1,691.81 that year, but there are no records as to the exact dates of the employment. Marzec claims that he stopped working when it was "warm out" and "before his birthday on November 11th [sic]." (R. 214.) He also testified at the administrative hearing that the job ended when the gas station "went out of business or something like that." (R. 346.) Beyond this information, nothing else is known about that employment.

1.  **First Claim for Benefits in 1972**

Also in 1972, Marzec submitted his first application for disability insurance benefits. The parties agree that the Social Security Administration ("SSA") found Marzec disabled as of December 3, 1972, 12 days after his 22nd birthday. The records from that claim no longer exist, however, making it impossible to determine the basis for the SSA's finding. (R. 278.)

While Marzec was receiving disability benefits, he was hospitalized on several occasions between 1973 and 1977. From January 2 to May 3, 1973, Marzec was hospitalized at Riveredge Hospital in Forest Park, Illinois due to a schizophrenic reaction. The records reflect that Marzec attacked his father in December 1972, requiring police intervention. (R. 84, 88-89.) Riveredge discharged him to Read Mental Health Center, where he remained as an inpatient for 132 days until September 12, 1973. (R. 219.) Marzec was readmitted to Read on October 18, 1973, and remained there for 82 days until January 8, 1974. (R. 220.) Later that year, Marzec was

hospitalized at ISPI from July 1 to August 8, 1974 due to schizophrenia and a personality disorder–explosive personality. (R. 77-78.) Marzec then returned to Read for a week between October 6 and 12, 1976. (R. 221.)

### 2. 1977 Cessation of Benefits Due to SGA

In 1977, the SSA determined that Marzec's disability had ceased in February of that year due to his engagement in substantial gainful activity. Once again, the records from that decision no longer exist, leaving only speculation as to the nature of that SGA. It is undisputed that Marzec earned $1,180.75 in 1974; $721.99 in 1975; $130.10 in 1976; and $1,441.65 in 1977. Marzec stated that he worked as a clerk for Maurice R. Rothchild's in Skokie, Illinois for a "short period" from 1976-77, but he has no recollection as to the exact months or number of hours he worked, or his rate of pay. Marzec's attorney claims that he only worked at Rothchild's for three months, and Marzec testified that the job ended when he "wound up . . . at Read" on June 4, 1977. (R. 221, 349.) Marzec remained at Read for 248 days until February 7, 1978. (R. 221.)

In 1979, Marzec earned $2,226.09 working as a salesman for Montgomery Ward for less than four months. The job ended because Marzec was unable to sell as much as other salesmen, and shortly thereafter, he was hospitalized at Read from October 25 to December 7, 1979. (R. 64, 213, 222.) Also in 1979, Marzec worked for two weeks as a salesman for Thomas Hair and Scalp Corporation, earning a total of $297.57, and he worked for two months as a clothing salesman for Karoll's Men's Fashions Inc., earning $1,350.25. (R. 133, 214.)

Marzec continued to be hospitalized for schizophrenia throughout the early 1980s. Specifically, he was admitted to Read over the following dates: March 25 to June 17, 1980; September 13 to October 24, 1980; May 15 to 27, 1981; December 14 to 17, 1981; and March 5 to 9, 1983. (R. 223-25.) He was also hospitalized at Madden Mental Health Hospital from October 11 to 15, 1984. (R. 225.) During that period, Marzec worked as a security guard for Andy Frain

4

Security Services for two weeks in 1980, earning a total of $115.00. (R. 64, 133.) He also worked the cash register at Save More Drugs for approximately 1 1/2 months at the end of 1983, earning $304.02. The position with Save More continued through 1984, though Marzec was transferred to stuffing newspapers, and he earned $2,384.03 that year. (R. 60, 133.)

Marzec submitted additional applications for disability benefits in 1976, 1980, 1983, and 1984, but all of those claims were disallowed on various grounds, including lack of a qualifying impairment, ability to perform SGA, and ineligibility based on income. (R. 14, 227-33.) The records from those claims no longer exist.

### 3. 1985 and 1998 Claims for Benefits

In 1985, Marzec again applied for, and was awarded disability insurance benefits, with an onset date of November 2, 1984. Marzec continues to receive those benefits to this day. (R. 233.) Although these records should exist given Marzec's pay status, they do not. (R. 250.)

In April 1998, at the age of 47, Marzec for the first time pursued benefits as a disabled adult child. This would entitle him to an additional $200 per month now, and an additional $700 per month if his father predeceases him. It is undisputed that Marzec has not engaged in any SGA from 1985 to the present.

## B. Hearing Testimony

At the June 15, 2000 hearing, neither Marzec nor his parents was able to recall any further details regarding Marzec's work and benefits history aside from those recounted above.

## C. The ALJ's Findings

The ALJ began by acknowledging the difficulty in deciding Marzec's request for CIB. She noted that Marzec has "a long-standing and very seriously debilitating psychiatric illness (schizophrenia) that has probably left him in a very tenuous or fragile state at all times in terms of his ability to demonstrate a capacity to engage in SGA." (R. 14.) She also noted that his earnings

were "not at levels that jump off the page and leave no doubt that they were SGA." (*Id.* (emphasis in original).) As for the missing records, the ALJ confirmed that:

> this office made considerable efforts to obtain prior files, which would be expected to contain valuable information missing from the present record, on the claimant's employment history. Those efforts failed, although this did not come as a surprise given the lapse of time, nearly 20 years, and the fact that SSA had also failed in an attempt to retrieve prior records before rendering a reconsideration determination. Additionally, the claimant's attorney [Beth Alpert] was formally requested to obtain records from the claimant's employers in 1979, 1980, and 1984. Ms. Alpert tried, but her efforts were not successful.

(R. 15.)

In assessing the available evidence, the ALJ first considered whether Marzec had established that he was disabled prior to attaining age 22 on November 20, 1972, as required for a CIB claim. 20 C.F.R. § 404.352(b)(1). The ALJ noted that the SSA found Marzec to be disabled as of December 3, 1972, and that he was in fact working for some time that year. She acknowledged that there is no way to know why the SSA awarded benefits as of December 3, as opposed to some earlier date, but found it reasonable to infer that Marzec was engaged in work activity constituting SGA right up to December 3, 1972. (R. 15-16.) The ALJ explained, for example, that in 1972, SSR 83-33 provided that earnings were presumptively SGA at more than $200 per month, and presumptively not SGA at less than $130 per month. Marzec earned wages of $1,691.81 in 1972, making it possible that he was performing SGA for at least 8 months that year ($1,691.81 ÷ $200), and perhaps as many as 13 months ($1,691.81 ÷ $130). (R. 16.) The ALJ concluded that "it cannot be said with certitude that the claimant was engaged in SGA on November 20, 1972, [but] he has not satisfactorily shown that he was not so engaged." (*Id.*)

The ALJ next considered whether Marzec could demonstrate the second element of his claim for CIB; namely, continuous disability from November 1972 through August 1997. 20 C.F.R. § 404.621(a). The ALJ noted that Marzec's benefits were discontinued in April 1977 upon an SSA finding that he was no longer disabled as of February of that year based on his performance of

SGA. There are no available records regarding this decision or the nature of Marzec's SGA, however. The ALJ thus considered Marzec's testimony that he was employed at Maurice R. Rothchild for a "short period" in 1977, and his earnings of $1,441.65. The ALJ observed that SSR 83-33 that year provided that earnings were presumptively SGA at more than $240 per month, so Marzec could have engaged in SGA for six months.

Marzec's attorney asserted that this constituted an unsuccessful work attempt ("UWA") because it ended when Marzec was admitted to Read Mental Health Center. (R. 17.) See 20 C.F.R. § 404.1574(c) (explaining that a UWA occurs if, after working for less then six months, an individual's impairment forces him or her to stop working). The ALJ disagreed, noting that the SSA found Marzec no longer disabled as of February 1977, but that he was not admitted to Read that year until June 4, 1977. (R. 17.) The ALJ also noted that under SSR 84-25, "if impartial supporting evidence [as to why claimant discontinued working] is not already a part of the claims file, confirmation with the employer is required." The ALJ acknowledged that "the present record does not support a finding that, in fact, the work in 1977 was non-excludable SGA," but stated that "it also does not support a contrary finding (i.e., the work was either non-SGA or, if SGA, excludable as an unsuccessful work [attempt])." (R. 18.)

The ALJ next addressed Marzec's employment and earnings in 1984. Marzec earned $2,384.03 working at Save More Drugs that year; the Social Security Regulations provided that earnings were presumptively SGA at more than $300 per month, and presumptively not SGA at less than $190 per month. It is thus possible that Marzec was engaged in SGA for at least 7 1/2 months ($2,384.03 ÷ $300), and perhaps as many as 12 months ($2,384.03 ÷ $190). In addition, Marzec indicated that his employment ended because of a change in ownership, eliminating the possibility of a UWA. (R. 19.)

The ALJ noted Marzec's Work Acitivity Report of May 2, 1998, in which he stated that he worked at Save More two days per week for six hours a day at a pay rate of $3.50 per hour. Based

7

on a disability onset date of November 2, 1984, as determined by the SSA, that works out to $1,820 for the year, or only about 76% of Marzec's actual earnings. (R. 19.) The ALJ accepted Marzec's testimony that he was hospitalized several times in 1983 and 1984, and found that "it cannot be assumed that his earnings were spread out evenly during the first 10 months of 1984, but instead may have been concentrated." As with the previous years, however, the ALJ determined that "too little is known about this employment to say that it was not SGA or, if SGA, that the work can be disregarded as an unsuccessful work attempt(s)." (*Id.*)

The ALJ went on to note that Marzec performed work in other years that may also disqualify him from benefits. For example, he earned $1,180.75 in 1974; $721.99 in 1975; $3,873.91 in 1979; $1,380.75 in 1980; $353.22 in 1981; and $304.02 in 1983. (R. 19.) Marzec's attorney argued that the bulk of Marzec's earnings in 1980 were from sheltered employment that cannot be considered SGA. The ALJ agreed that a sheltered workshop setting may be evidence of a subsidy (which does not qualify as SGA under SSR 83-33), but found that Marzec "has not provided the necessary collaborative evidence to determine what portion of the claimant's gross earnings from this employment, or any other employment, was subsidized." (R. 20.)

Based on the available evidence, the ALJ found that Marzec failed to demonstrate that (1) his earnings from work performed in 1972, 1977, and 1984 were not substantial gainful activity; or (2) he was under a continuous disability that began on or before the day he attained age 22. The ALJ thus concluded that Marzec was not entitled to CIB. (R. 22.)

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing this decision, the court may not engage in its own analysis of whether Presta is severely impaired as defined by the Social Security Regulations.

8

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citation omitted). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* (citation omitted). The court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing 42 U.S.C. § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). (citation omitted).

Although this court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (internal citations omitted). The court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young*, 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

**B. Analysis**

The court is deeply troubled by the fact that most of the pertinent employment and claims records in this case no longer exist. It appears from the record that the ALJ made significant efforts to locate the information, but to no avail. The ALJ's opinion states that "this office made considerable efforts to obtain prior files, which would be expected to contain valuable information missing from the present record, on the claimant's employment history," but that "[t]hose efforts failed." (R. 15.) By letter dated March 16, 2000, the ALJ asked Marzec's attorney to attempt to locate employment information for the years 1979, 1980, and 1984, the years with "the greatest earnings." (R. 132.) Marzec's attorney responded by letter dated June 13, 2000, setting forth the rather sketchy employment information detailed earlier.

On January 3, 2001, the ALJ sent Marzec's counsel another letter stating:

> After lengthy efforts, Shannon Chisholm of my office advises me that the files with regard to Mr. Marzec's 1977 and 1985 applications are no longer in existence. I had her pursuing the 1985 application from a variety of angles as the file should exist as he is in pay status. However, at this point, there are no further avenues to administratively pursue."

(R. 250.) The record also confirms that the SSA "requested [Marzec's] prior claims folder to review any additional information in that folder." (R. 29.) From this information, and from statements made at the oral argument, the court understands that Marzec's SSA records from before 1984 have been destroyed pursuant to SSA's records retention policy, and that his records from 1985, which should still exist considering that he is currently receiving benefits pursuant to that claim, have been lost.

The difficult question for this court is how to balance the scales of justice in this highly unusual case where the claimant is clearly suffering from a longstanding mental illness and likely is in great need of the requested benefits, but the records supporting Marzec's claim are largely missing and he, not surprisingly, cannot shed light on his employment from some 20 to 30 years ago.

### 1. Standard for Disabled Adult Child Benefits

To qualify for CIB in this case, Marzec must establish that (1) he became disabled prior to attaining age 22 (which occurred on November 20, 1972); and (2) he was continuously disabled through August 1997 (which is the earliest date he could receive benefits based on his April 1998 application). 20 C.F.R. §§ 404.352(b)(1), 404.621(a). For purposes of the second element, Marzec must demonstrate that he did not engage in any substantial gainful activity from November 1972 through August 1997. The Social Security Regulations define SGA as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 405.1572; *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). "Where it is established that the claimant can hold

a job for only a short period of time, the claimant is not capable of substantial gainful activity." *Kangail v. Barnhart*, 454 F.3d 627, 39 (7th Cir. 2006) (quoting *Gatliff v. Commissioner of Social Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999)).

As noted, earnings of more than a certain amount per month (depending on the year) create a presumption of SGA. 20 C.F.R. § 416.974. It is possible, however, to earn a "decent wage" and still not engage in gainful activity. For example, work is not SGA if it is maintained only through extensive assistance or employer charity. In addition, when (1) after working for six months or less, (2) an impairment forces the claimant to stop working or reduce work such that earnings fall below the level of SGA, it is considered an unsuccessful work attempt and not SGA. 20 C.F.R. § 404.1574(c). Moreover, work that pays less than a certain sum per month is presumptively not SGA. SSR 83-33.

### 2. Application

Marzec argues that the ALJ erred in concluding that he did not met his burden of establishing either of the two elements required for CIB. The court considers each in turn.

#### a. Disability Prior to Age 22

The ALJ found that Marzec "has not satisfactorily shown that he was not . . . engaged [in SGA]" on November 20, 1972. The ALJ noted that Marzec earned $1,691.81 that year, and that the SSA found him to be disabled as of December 3, 1972. In the ALJ's view, "a reasonable inference is that the claimant was engaged in work activity right up to December 3, 1972 and that this work appeared to be SGA, even if the issue was not formally adjudicated." (R. 16.) Marzec argues that the chosen December 3 onset date more reasonably corresponds with either the date he went into the District Office to file his SSI application, or the date he attacked his father. (R. 84; Pl. Mem., at 7.)

11

On the current record, it is impossible to verify whether Marzec was engaged in SGA at the time he attained age 22. There are no records as to the exact nature and dates of Marzec's employment that year, or his rates of pay. Nor is it clear that such information would be contained within the 1972 social security file, assuming it still existed. Marzec testified that he worked at a gas station in the summer of 1972, and that he stopped working there before it became cold outside when the gas station went out of business. (R. 346.) Given the length of time that has passed and Marzec's mental condition, this testimony is not particularly reliable. As the ALJ observed, "taking into account that this issue was looked at in 1973 . . . when memories were fresher and better information was available, [Marzec's] assertions more than 30 years after the fact provide an insufficient basis to conclude that the claimant's work was all performed prior to November 1972." (R. 16.)

Marzec objects that the ALJ improperly treated the 1973 SSA decision as having *res judicata* effect as to his disability onset date. (Pl. Mem., at 9.) To the contrary, the ALJ expressly stated that the prior determinations did not have any such effect. (R. 15.) Marzec also argues that the ALJ erred in failing to consider the factors set forth in SSR 83-20 for determining the onset date of a disability of nontraumatic origin. SSR 83-20 applies where an ALJ finds a claimant disabled as of an application date, and the question arises whether the disability arose at an earlier time. *See Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997). In such cases, an ALJ must consider (1) the claimant's alleged onset date; (2) the claimant's work history; and (3) medical and all other relevant evidence. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005). Of these factors, "medical evidence is 'the primary element in the onset determination,' and the date chosen 'can never be inconsistent with the medical evidence of record.'" *Id.* (quoting SSR 83-20, at *2). If there is no precise date on which an impairment became disabling, the ALJ must infer the onset date from medical and other evidence, with the assistance of a medical expert. *Id.* Where no reasonable inference is possible based on the available evidence, "it may be necessary to

explore other sources of documentation . . . from family members, friends, and former employees to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." *Id.* (quoting SSR 83-20, at *3).

The court finds no error in the ALJ's failure to consult a medical expert to assist in determining Marzec's disability onset date. Significantly, the ALJ did not make the determination that Marzec was disabled as of December 3, 1972. Rather, the ALJ merely found that Marzec had not established disability prior to attaining age 22 as required for CIB benefits. Thus, it is not clear that SSR 83-20 even applies. *See Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) ("The ALJ did not find that Scheck was disabled, and therefore, there was no need to find an onset date. In short, SSR 83-20 does not apply.")

The evidence, moreover, supports the ALJ's determination that Marzec did not establish disability prior to attaining age 22. There is no medical development in November 1972 supporting an inference that Marzec was disabled that month. Indeed, the medical records reflect that after June 1971, Marzec was not hospitalized again until January 1973, following a December 1972 incident in which he attacked his father. (R. 84.) In addition, Marzec's mother testified at the administratl've hearing that nothing changed in November and December 1972, explaining: "this was just when he started getting Social Security, it would have been after he had been in the hospital a couple of times. It was after the job." (R. 369.) That job, moreover, fairly qualifies as SGA. Marzec earned wages of $1,691.81 in 1972, making it possible that he was performing SGA for between 8 and 13 months that year ($1,691.81 ÷ $200 or $1,691.81 ÷ $130). Marzec's attorney conceded at the oral argument that work is presumptively a successful work attempt if it lasts for six months or more. Given the evidence of Marzec's employment during 1972, and the lack of any medical event until December of that year, the ALJ reasonably concluded that Marzec had failed to establish that he was not engaged in SGA as of November 20, 1972, or that he was disabled prior to that date.

13

The court recognizes that Marzec is at a disadvantage in attempting to establish disability in the absence of pertinent records. In addition, it appears that Marzec was not represented by counsel when he applied for benefits in 1972 and did not appeal the December 3, 1972 disability onset date. Nevertheless, it is Marzec's burden to demonstrate that he was disabled prior to attaining age 22, and the unavailability of records is in large measure due to the fact that he waited until he was 47 years old to apply for child benefits. *See, e.g., Scheck,* 357 F.3d at 702 ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); *Bodnarchuk v. Barnhart,* 70 Fed.Appx. 411, 412 (9th Cir. 2003) ("The fact that the [SSA] had destroyed the medical records that Bodnarchuk submitted in connection with a 1972 claim for disability benefits does not relieve him of the burden of producing sufficient medical evidence to prove his disability.") The ALJ properly concluded that Marzec did not meet his burden of establishing disability prior to November 20, 1972.

b. **Continuous Disability**

Even assuming that Marzec could establish that he was disabled prior to attaining age 22, he must still demonstrate that he was continuously disabled from that date through August 1997. This requires Marzec to prove that he never engaged in any substantial gainful activity throughout that entire period. The ALJ first considered Marzec's employment in 1977. In May of that year, the SSA found that Marzec had engaged in SGA and was no longer disabled. Once again, there are no records related to this claim and no method of determining the exact nature of the SGA.

It is undisputed that Marzec worked for Maurice R. Rothchild's and earned $1,441.65 in 1977. Marzec cannot recall the exact months or number of hours he worked, or his rate of pay. Marzec's attorney claims that he only worked at Rothchild's for three months, and Marzec testified that the job ended when he "wound up . . . at Read" on June 4, 1977. (R. 221, 349.) The ALJ noted, however, that the SSA discontinued Marzec's benefits as of February 1977, several months

14

before he was admitted to Read. Thus, the Rothchild's employment could not be deemed an unsuccessful work attempt. (R. 17.) As for the amount of money earned, assuming Marzec only worked for three months, as his attorney claims, then he earned well above the $240 per month that was presumptively SGA that year. SSR 83-33. In addition, Marzec's attorney conceded at the oral argument that work lasting between three and six months could be considered SGA depending on the nature of that employment.

Marzec finds it significant that he was likely in a mental facility at the time he received notice that his benefits were being terminated in 1977. He also argues that he probably received notice "sometime between September 1, 1977 and February 28, 1990," when the notices were presumptively confusing. SSR 95-1p (explaining that the initial and reconsideration determination notices during that period "did not further state that filing a new application instead of a request for administrative review could result in the loss of benefits.") In Marzec's view, these circumstances warrant reopening the 1977 determination that he had performed SGA. See SSR 91-5p ("When a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination . . . SSA will determine whether or not good cause exists for extending the time to request review.")

Significantly, the ALJ did consider the evidence available from 1977, including Marzec's evidence regarding his employment and medical condition at that time. The ALJ also attempted to locate the 1977 claims file to assess the rationale behind the SSA's conclusion that Marzec was no longer entitled to benefits as of February of that year due to the performance of SGA. As noted, it is Marzec's burden to demonstrate that he was not engaged in SGA at any time in 1977, or that any SGA constituted an unsuccessful work attempt. *Scheck*, 357 F.3d at 702; *Bodnarchuk*, 70 Fed.Appx. at 412. The ALJ did not err in concluding that Marzec had failed to meet his burden here.

The same is true of Marzec's employment in 1984. The SSA awarded him a disability onset date of November 2, 1984 for this DIB claim. There is no evidence of a medical event occurring on that date, but he was hospitalized for five days between October 11 and 15, 1984. (R. 225.) Regardless, Marzec earned $2,384.03 at Save More Drugs in 1984, which could mean that he performed work presumptively considered to be SGA for between 7 1/2 and 12 months that year ($2,384.03 ÷ $300 or $2,384.03 ÷ $190). In addition, Marzec indicated that his employment ended because of a change in ownership, eliminating the possibility of an unsuccessful work attempt.

It is true that several of Marzec's employment efforts throughout the late 70s and 80s were either clearly not SGA or qualified as unsuccessful work attempts. For example, in 1979, Marzec worked for two weeks as a salesman for Thomas Hair and Scalp Corporation, earning a total of $297.57, and he worked for two months as a clothing salesman for Karoll's Men's Fashions Inc., earning $1,350.25. (R. 133, 214.) In 1980, Marzec worked as a security guard for Andy Frain Security Services for two weeks, earning a total of $115.00. Nevertheless, the fact that Marzec had some UWAs over the years does not refute that he was engaged in SGA in 1972, 1977, and 1984. Thus, Marzec has not established a continuous disability for purposes of receiving CIB benefits.

## CONCLUSION

The court is sympathetic to Marzec's situation and struggled to reach a conclusion that is both fair and consistent with the purposes of the Social Security Act and its regulations. On this record, the ALJ properly determined that Marzec has not established that he is entitled to benefits as a disabled adult child. Thus, the Commissioner's motion for summary judgment is granted, and

Marzec's cross-motion for summary judgment is denied. This decision, of course, has no effect on Marzec's receipt of disability insurance benefits in his own right pursuant to his 1985 claim.

Dated: December 6, 2006

ENTER:

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge